# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DONALD E. ROWLAND, Jr.,** | Case No. 3:16-cv-2334-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,**[1] Acting Commissioner of Social Security, | |
| Defendant. | |

Jenna L. Mooney and Kathleen R. Dent, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201; and Daniel S. Jones, LAW OFFICES OF CHARLES E. BINDER AND HARRY J. BINDER, LLP, 485 Madison Avenue, Suite 501, New York, NY 10022. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney; UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Donald E. Rowland, Jr. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision was not based on the proper

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Commissioner Carolyn W. Colvin as the defendant in this lawsuit.

legal standards and the findings were not supported by substantial evidence, the decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The District Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### A.     Plaintiff's Application

Mr. Rowland filed his application for DIB on April 3, 2013, alleging disability as of April 21, 2012. AR 140-45. Born in September 1967, Mr. Rowland was 44 years old on the alleged disability onset date and 47 years old at the time of the administrative hearing. AR 41, 140, 160. He speaks English and is a high school graduate. AR 165. He alleges disability due to bulging disc injury, a herniated disc, cervical and lumbar spine impairment, severe back pain, multiple joint arthritis, hypertensive cardiovascular disease (hypertension), and high cholesterol.

AR 164. The Commissioner denied Mr. Rowland's application initially and upon reconsideration, and Mr. Rowland requested a hearing before an Administrative Law Judge ("ALJ"). AR 98-99. After an administrative hearing, the ALJ found Mr. Rowland not disabled in a decision dated August 3, 2015. AR 16-28. On October 18, 2016, the Appeals Council denied Mr. Rowland's request for review. AR 1-6. Thus, the ALJ's decision became the final decision of the Commissioner, and Mr. Rowland now seeks review in this Court.

**B.     The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe

> impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.920(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis. At step one, the ALJ found Mr. Rowland had engaged in substantial gainful activity after the alleged onset date, but continued the sequential analysis because subsequently there was a continuous 12-month period before the date last insured during which Mr. Rowland did not engage in substantial gainful activity. AR 21-22. At step two, the ALJ concluded that Mr. Rowland had the severe impairments of obesity and degenerative disc disease. AR 22. At step three, the ALJ determined that Mr. Rowland did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.*

The ALJ next assessed Mr. Rowland's RFC and found that he could perform sedentary work with the following limitations: he could occasionally stoop, climb, and crawl; frequently crouch and kneel; and he must avoid concentrated exposure to unprotected heights, moving machinery, and similar hazards. AR 23. At step four, the ALJ found that Mr. Rowland could not perform his past relevant work. AR 26. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Mr. Rowland could perform jobs that exist in significant numbers in the national economy, including manual small parts assembler, final assembler optical, and weight tester. AR 27. Accordingly, the ALJ found Mr. Rowland not disabled. AR 28.

## DISCUSSION

Mr. Rowland contends the ALJ made the following legal errors in evaluating his case: (1) improperly evaluating the medical opinion of his treating physiatrist; and (2) improperly assessing the credibility of his symptom allegations.

## A. Medical Opinion Evidence

Mr. Rowland argues that the ALJ improperly rejected the opinion of his treating physiatrist, Dr. Musson. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without

providing reasons for doing so; an ALJ effectively rejects an opinion when the ALJ ignores it. *Smolen*, 80 F.3d at 1286.

Plaintiff's treating physician, Dr. Musson, completed an attorney-generated disability questionnaire in May 2015. AR 360-64. The doctor listed the diagnoses of cervicalgia, lumbago, lumbar spondylosis, and lumbosacral radiculitis, and opined that low back pain and cervical radiculitis would limit Mr. Rowland to two hours of seated work, and two hours of standing and/or walking each workday. AR 360, 362. Dr. Musson further opined that Mr. Rowland would need to change positions two-to-three times per hour, was limited to lifting and carrying 10-20 pounds occasionally, would require unscheduled breaks on an hourly basis, and would be expected to miss work more than three times per month due to his symptoms. AR 25, 363-64.

As a threshold matter, Mr. Rowland asserts that Dr. Musson's opinion should have been accorded controlling weight because the ALJ failed to identify any contradictory evidence. Pl.'s Br. 11. This assertion is without merit. The ALJ found that the extensive limitations assessed by Dr. Musson were contradicted by Mr. Rowland's own descriptions of his daily activities, minimal clinical examination findings, minimal objective evidence in medical imaging of record, and the opinions of the reviewing state agency physicians. AR 25-26. Accordingly, the operative legal standard for reviewing the ALJ's rejection of Dr. Musson's opinion is the specific-and-legitimate standard. *Lester*, 81 F.3d at 830.

Mr. Rowland also argues that Dr. Musson "is a specialist in physical medicine and rehabilitation giving opinions in his area of specialty," which the ALJ may not ignore. Def.'s Br. 12. The ALJ, however, did not ignore Dr. Musson's opinion. Rather, the ALJ explicitly recited the limitations that Dr. Musson attested to and provided rationales for finding Dr. Musson's assessment to be of lesser probative value. This was well within the ALJ's

authority. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (holding that the ALJ is the proper arbiter of the medical evidence and may resolve inconsistencies by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). For the same reason, Mr. Rowland's assertion that the ALJ is "not qualified to equate particular clinical and objective medical findings with a certain functional capacity in the face of opinions from a treating specialist who found the same evidence consistent with an inability to work on a full-time basis" is unavailing. The determination of whether a claimant's impairments are consistent with his ability to perform substantial gainful activity is a legal one, and for this reason, ALJs are not bound by a physician's opinion that a claimant is unable to work. *See* 20 C.F.R. § 404.1527(d)-(e) (stating that no special significance is given to opinions on an issue reserved to the Commissioner); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Nevertheless, the Court must consider whether each of the rationales provided by the ALJ for rejecting the treating physician's opinion met the applicable legal standard.

Mr. Rowland argues that the ALJ erred in considering Mr. Rowland's ability to perform ADLs, arguing that his "sporadic" activities do not constitute substantial evidence he can work full time. Pl.'s Br. 12-13. Inconsistency between a treating provider's opinion and a claimant's reported daily activities is a valid reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Rather than identifying any specific inconsistency, however, the ALJ found that there was "nothing in the claimant's work history or activities of daily living that would explain or provide a basis for such extreme limitations." Although the ALJ previously noted that Mr. Rowland was able to do household chores such as cooking, cleaning, and laundry, as well as

grocery shopping, driving, and hunting, the ALJ failed to explain how any of those activities were inconsistent with Dr. Musson's findings. Thus, the ALJ's rationale did not meet the specific-and-legitimate legal threshold.

On review, the Commissioner argues, *post hoc*, that "the ALJ reasonably relied on these activities to discount Dr. Musson's opinion that essentially restricted Plaintiff to lying down 20 hours a day." Def.'s Br. 5. The ALJ, however, did not find that Dr. Musson was of the opinion that Mr. Rowland was relegated to lying down for 20 hours of the day, and Dr. Musson did not state that Mr. Rowland was required to do so. Rather, Dr. Musson's opinion was that Mr. Rowland was able to "perform a job in a seated position" and "perform a job standing and/or walking," each for two hours in an eight hour workday "in a competitive environment on a on a sustained and ongoing basis (eight hours per day, five days per week)." AR 362. Although the Court recognizes that the Commissioner's interpretation was derived by adding the two two-hour time periods together, the Court is not persuaded the Dr. Musson implied that Mr. Rowland was required to lay down for 20 hours each day. Rather, the plain language of Dr. Musson's opinion is that he believes that Mr. Rowland had the capacity to perform work in a competitive environment, and on a sustained and ongoing basis, for only four hours per day. *See* AR 362. This interpretation is consistent with Dr. Musson's assessment that Mr. Rowland would require numerous unscheduled breaks, positional adjustments, rest periods, and periods of interference from pain and fatigue. AR 363. Moreover, because the Commissioner's argument was not relied upon by the ALJ, the Court may not use it in support of the ALJ's non-disability decision. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted).

Mr. Rowland also argues the ALJ erred by finding that Dr. Musson "provided no explanation for his findings." AR 25. The Court agrees. Dr. Musson expressly indicated that his

diagnoses were based on a January 14, 2013 lumbar spine MRI and cervical spine x-rays taken on December 28, 2012. AR 284-85, 286. The Commissioner argues that Dr. Musson's treatment notes indicate that Mr. Rowland's pain was well-managed with medication. Def.'s Br. 4. As the Ninth Circuit has noted, although a claimant might be described as "stable" or "well-managed" on medication, it does not necessarily follow that such treatment has alleviated symptoms such that the claimant is able to work. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014); *see also Snoeck v. Colvin*, 584 Fed. App'x 755, 756 (9th Cir. 2014) (mem.). Although Dr. Musson described Mr. Rowland's condition as "managed well on opioids," the Commissioner fails to recognize this statement in context and that Dr. Musson also noted that Mr. Rowland "ha[d] not had much progress with time, therapy, injections, or other modality" and that his pain complaints "appear[ed] discogenic with a radicular component which [wa]s consistent with his MRI." AR 344. Dr. Musson further noted "abnormal" results on examination of the spine, limited range of motion ("ROM"), diminished sensation relative to the sacral spine. AR 343. Although two chart notes cited by the Commissioner indicate Mr. Rowland "is managed with chronic opioids," Mr. Rowland continued to report leg pain and back pain, and the doctor noted abnormal spine examinations in both instances, with decreased ROM and tenderness to palpation. AR 345-46, 349-50. Accordingly, the Commissioner's implication that the chart notes cited above suggest non-disability is not persuasive. Similarly, the Commissioner's contention that Dr. Musson encouraged exercise activities is also unpersuasive. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) (crediting treating physician's opinion that plaintiff was disabled, due in part to lower back pain, despite physician's advice to pursue weight loss through exercise and dietary changes).

Mr. Rowland also argues that the ALJ erroneously discounted Dr. Musson's 2015 medical opinion on the ground that the doctor was not in a position to assess Mr. Rowland's condition on the alleged onset date of April 2012. AR 25. Although Dr. Musson indicated that his opinion of Mr. Rowland's symptoms applied as far back as April 21, 2012, there is merit to the Commissioner's contrary argument. *See* AR 364. For example, as the ALJ found, as Mr. Rowland himself testified, that Mr. Rowland continued to work for "a few months" after April 2012, until his employer's plant had closed. AR 25, 47-49. Dr. Musson, however, also indicated that his opinion was based in part on his review of x-rays of Mr. Rowland's cervical spine taken in December, 2012, which were taken just eight months after the alleged onset date, and the MRI that was done the following month. AR 286, 360. Moreover, Dr. Musson, and other physicians of record who treated and reviewed the medical imaging, determined Mr. Rowland's condition was degenerative, which by definition involve progressive worsening over time. *See* AR 284-86, 360-61, 366; *see also Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (quoting *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)). A close review of the record reflects that Mr. Rowland first complained that his shoulder and arm were "bothering him more again" in May 2012, and that his lower back pain was worsening by November 2012. AR 254, 256. Thus, although Mr. Rowland indicated that he chose the April 21, 2012 onset date because he had an "incident" at home involving a "pinching nerve" in his back, no such incident is recorded in contemporaneous chart notes. *See* AR 47.

Regardless of the precise date of disability onset, however, the ALJ erred to the extent that he found that, because Mr. Rowland was able to persist at his job for a "few months" after the apparent acute incident at his home where his back pain was exacerbated, Mr. Rowland remained not-disabled for years afterward, despite ample objective evidence of degenerative disc

disease in his spine including clinical examinations and medical imaging studies, as well as the medical opinions of at least two treating physicians who felt that he was significantly impaired and would not be expected to improve, despite all available treatment. *See, e.g.*, AR 360-64, 366, 369. Thus, the Court concludes that, on this record, none of the reasons proffered by the ALJ or the Commissioner constitute a valid, specific-and-legitimate reason to discredit Dr. Musson's medical opinion. Therefore, remand is appropriate.

**B.     Plaintiff's Symptom Testimony**

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2; *see also Trevizo*, 871 F.3d at 678 n.5 (9th Cir. 2017). The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing, Mr. Rowland stated that he is disabled due to pain in his lower back, legs, neck, arms, and shoulders. AR 50. His pain is exacerbated by activity, and that steroid injections had also increased his pain. *Id.* Mr. Rowland testified he is able to cook simple meals for his wife and 18 year-old son, he is able to grocery shop with their assistance, and is able to drive and can perform errands around town. AR 51. He described being able to lift a ten-pound object, but could not easily manipulate such an object. AR 55-56. Mr. Rowland explained that he is no longer able to attend car shows, church, or his son's sporting events because he is unable to sit for extended periods, and must alternate sitting/standing and lying down throughout the day. AR 54, 57. He described having side-effects from pain medication that limit his ability to drive. AR 57. Mr. Rowland also stated that he has difficulty walking further than 100 feet at a time. AR 59.

The ALJ found that Mr. Rowland's statements concerning the intensity, persistence, and limiting effects of his pain symptoms were not entirely credible. AR 24. In support, the ALJ found that Mr. Rowland's allegations of functional limitation was belied by his reported ADLs, including cooking and cleaning, driving, grocery shopping, and other household chores. AR 24. The ALJ also found Mr. Rowland's allegations were inconsistent with the objective medical evidence of record, including reports that his pain had improved following steroid injections in his back, and that he was reported as "doing well" by medical providers. AR 24-25. Further, the ALJ found Mr. Rowland's symptom allegations to be inconsistent with the ability to work after

the alleged onset date and that his employment ended due to a layoff rather than for medical reasons. AR 25. Mr. Rowland argues that none of the ALJ's findings were valid.

As discussed above, although an ALJ may generally discredit a claimant's testimony when it is contradicted by reported ADLs, or when such ADLs meet the threshold for transferable work skills, the ALJ failed to provide adequate support for either avenue. *See Orn*, 495 F.3d at 639. Although the ALJ noted that Mr. Rowland cooks, cleans, "does most chores," grocery shops, launders, drives, hunts, grocery shops, and dishes, the ALJ failed to explain how any of those activities contradicts Mr. Rowland's testimony. In fact, the ALJ glossed over Mr. Rowland's testimony that he is limited in his ability to cook (AR 51, 173, 207-08), that he requires assistance when he shops and sometimes shops online (51, 209), that his "hunting" activities appears to be limited to "shooting and reloading" (AR 53, 210), that he does not do each of the activities listed every day because more activity causes greater pain (AR 50, 55, 172), that he often requires help from his wife and son with the chores the ALJ identified (AR 55, 207), that there are days he cannot get out of bed due to pain (AR 56), that his ability to drive is limited by side-effects from his pain medication (AR 57), and that generally, he has good days and bad days, and his ADLs are limited by his pain levels (AR 174-75, 209-10). Thus, in the context of Mr. Rowland's full remarks, his ability to perform ADLs to various degrees is not inconsistent with his symptom allegations.

Mr. Rowland received a transforaminal epidural steroid injection ("TFESI") from Patrick Rask, M.D., on May 21, 2014, to alleviate lumbar radiculitis. AR 314. Immediately after the procedure, Mr. Rowland was reported to have tolerated the injection well, and reported 20 percent pain improvement. *Id.* He was provided with a "pain diary" in order to record results over the following week. *Id.* One week later, however, treating provider Gina Anderson, D.O.,

indicated that the injection "did not work" and that the "TFESI right [was] not successful." AR 312. Mr. Rowland reported continued "lumbosacral radiculopathy" and edema (swelling). *Id.* Although the ALJ found Mr. Rowland's account of pain following the injection non-credible, there is no indication that Dr. Anderson felt Mr. Rowland was malingering or that his pain allegations were not believable at later clinical visits or that it was unusual or unlikely that the injection provided initial relief (albeit only 20 percent), but thereafter ceased to be effective. AR 09, 311. Moreover, the ALJ made no finding that Mr. Rowland was malingering, nor does the ALJ provide any factual basis for his conclusion that the injection provided lasting relief. AR 24-25. Accordingly, the rational did not meet the specific-and-legitimate standard.

Similarly, for the reasons stated in the previous section, the chart notes indicating that Mr. Rowland was "stable" and "doing well on his medications" are insufficient reasons for finding his pain complaints were not as disabling as he alleged. *See supra*. The ALJ's assertion that clinical examinations revealed no pain on palpation are directly contradicted by the record. *See* AR 343, 346, 349, 352, 355, 358 (pain or tenderness detected in *every* examination of Mr. Rowland's spine at L5-S1).

Finally, the ALJ discredited Mr. Rowland's pain complaints because he was laid off from his job, rather than forced to quit due to his impairment. As discussed above, the fact that Mr. Rowland continued to work after he suffered some type of acute injury at home around April 2012, creates some doubt regarding whether Mr. Rowland's alleged onset date was not until later. The ALJ, however, did not go into any significant detail in his questioning about the incident, nor how Mr. Rowland was able to continue to working for a "few months" after the injury. Further, the record reflects that Mr. Rowland began having worsening back pain in the months that followed, which compelled him to seek treatment and which led to the x-ray studies

in December 2012, which in turn necessitated the January 2013 MRI, which demonstrates degenerative disc disease. Accordingly, viewing the record as a whole, the fact that Mr. Rowland attempted to work for several weeks despite longstanding back pain, which began worsening after an incident at home in April 2012, is not a persuasive reason to discredit his otherwise consistent testimony.

C.     **Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the

> record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimant's allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, the ALJ committed reversible errors in assessing the medical opinion of Dr. Musson and assessing the credibility of Mr. Rowland's pain complaints, satisfying the first prong of the credit as true rule. The second prong, however, is not met because the record is incomplete. Neither the medical record nor the testimony provided at the hearing conclusively establishes an onset date. Although Mr. Rowland argues he was disabled on April 21, 2012, he was able to work after that date for a number of weeks before his employer's facility was shut down. The ALJ, however, did not obtain any testimony about how Mr. Rowland was able to continue to work despite his worsening pain or ask whether any special accommodations were needed, requested, or provided, and if not, whether Mr. Rowland would still be able to do his

prior job as performed. Instead, in response to the ALJ, Mr. Rowland testified that his work activity consisted of "monitoring equipment" and that he did some occasional lifting, but no further details were discussed. *See* AR 49-50. Consequently, no definitive onset date was established. AR 21-22.

Accordingly, this matter should be remanded on an open record. On remand, the ALJ should continue to develop the record as to how Plaintiff's pain evolved, including how it affected his ability to perform his past work in the weeks leading up to his layoff in order to establish an onset date, if indeed Mr. Rowland is deemed disabled under the Act. Because the record is not fully developed, the Court does not reach the final step of the credit-as-true analysis. *Treichler*, 775 F.3d at 1105.

## CONCLUSION

Because Mr. Rowland has identified harmful error in the ALJ's assessment of his symptom allegations and the ALJ's assessment of the medical opinion evidence, the Commissioner's decision that Mr. Rowland was not disabled from April 21, 2012 through August 3, 2015, was not based on proper legal standards or supported by substantial evidence; thus, Mr. Rowland's request for remand (Dkt. 1) is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

DATED this 13th day of November, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge